## UNITED STATES v. ALPHA PORTLAND CEMENT CO.

(District Court, E. D. Pennsylvania. May 23, 1917.)

No. 4072.

PLEADING ⟨⟩350(3)—RULE FOR JUDGMENT ON PLEADINGS—DETERMINATION OF QUESTIONS OF FACT.

Defendant owned certain properties, which it had improved by an outlay of moneys, which brought its total cost value to over $800,000, at which value it was carried on defendant's books. It organized a subsidiary company, to which such properties were transferred in exchange for $2,000,000 in stock, substantially all of the stock of such subsidiary company, which stock was distributed among defendant's stockholders as a stock dividend. The two companies then merged or consolidated, with a capital stock of $10,000,000, which was distributed among the stockholders of the two companies in exchange for the stock held by them in their respective companies. The government sought to tax the difference between the cost value of such properties and the $2,000,000 for which they were sold as a profit. *Held* that, where the affidavit of defense denied that there was in fact such a profit, this was a question of fact, and could not be determined on a rule for judgment for want of a sufficient affidavit of defense, the equivalent of a demurrer.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 1075, 1077.]

At Law. Action by the United States against the Alpha Portland Cement Company. On rule for judgment for want of sufficient affidavit of defense. Rule discharged.

John H. Hall, Asst. U. S. Atty., and Francis Fisher Kane, U. S. Atty., both of Philadelphia, Pa.

Wm. S. Furst, of Philadelphia, Pa., and Louis H. Porter, of New York City, for defendant.

DICKINSON, District Judge. The question involved in this case may be said to be a very narrow one, and its decision to turn upon a very sharp point. The following three propositions will present the positions of the parties to the controversy: From the viewpoint of the taxing authorities the defendant had property which it had acquired at a price, and which it disposed of at an enhanced price, thereby reaping at taxable profit. From the viewpoint of the defendant, the whole transaction was nothing more than a revaluation of the property. The retort of the United States is that the defendant declared it had made a sale of its property at an advance in price, that it received payment at an advanced price, and that it could not have done what it did do, nor have enjoyed the benefits of the transaction, unless the transaction had in fact been what on its face it was. The defendant in consequence will not be heard to deny that it received the profit it thus is shown to have received. It is thus seen that we are down to the determination of a fact, and as the facts must be sought in the affidavit of defense, the quest is narrowed to an inquiry into what the affidavit discloses.

The thing over which there is controversy is one of the creations of those Aladdins of finance who employ their genius in the reorganization of corporations. The defendant company February 24, 1909,

bought a property known as the "Buckhorn." The price was $415,-000. It also bought for $416,627.27 a number of shares of the stock of the Catskill Cement Company, together with letters patent No. 677,-870, issued for an invention. We state these as purchases made by the defendant, ignoring the fact that the purchases were made in the names of others for it. The defendant company had a capital stock of $2,-000,000. What may be aptly termed as a plan of reorganization was adopted. This involved, as part of the details, the organization of a subsidiary company and the subsequent consolidation of the two companies, the merged corporation having a capitalization of $10,000,000. Other details of this plan of reorganization were that this subsidiary company, subsequently organized under the name of Cement Manufacturing Company, was given an authorized capital of $2,001,000, $1,000 of which was issued for cash, and $2,000,000 for property. The cash stock was issued to individuals, to whom the stock was nominally issued. The real owner of it, however, was the defendant company. The subsidiary company then issued its stock to the par value of $2,000,-000, receiving therefor the Buckhorn property above mentioned. This $2,000,000 of the stock of Cement Manufacturing Company went to the defendant company and was distributed by it among its stockholders as a property dividend. The Cement Manufacturing Company and the original company, now the defendant company, were then merged or consolidated under the name of the latter company, and the consolidated company was given a capital stock of $10,000,000, as originally planned. This capital stock was in the form of $2,000,000 preferred and $8,000,000 common shares of that nominal par value. The $2,000,000 of preferred stock was issued to the Cement Manufacturing Company stockholders and the $8,000,000 of common to the stockholders of the original defendant company, in exchange for the stock they held of their respective companies. It may be added as a fact that the properties above mentioned of the original company defendant have been developed and improved at an outlay of moneys which brought these assets of the company, as the books of account had been kept, up to a total asset value, as carried upon the books, of $868,-315.01. Whether the original defendant company had other assets to represent its total capitalization of $2,000,000 we do not know, and the fact is of no importance, as in financial transactions, such as the one under consideration, a few millions, more or less, is a negligible sum. Assuming the assets represented by the figures $826,315.01 to be the whole of its possessions, we have this state of affairs existing at different times or during the whole time. It may help to clarify our view by stating separately the conditions (1) as affecting stockholders; (2) as affecting the company; (3) the transaction as it was; and (4) the transaction as it was made to appear to be.

1. The stockholders at first held certificates of stock representing shares in the assets of the original defendant company. These assets (as we are assuming) had been acquired by the company at a cost of $868,315.01, and had been so entered on the books of the company. The certificates of stock, as a mode of expressing the proportionate shares of the stockholders in the assets, represented the entire holdings of the company by the figures $2,000,000, or this was given as the

nominal par value of the total number of ownership shares into which its ownership was divided. When the transaction was done, the stockholders had precisely what they had before, so far as ownership of assets goes. The books of account had been rewritten, so as to show that the assets had cost the company $10,000,000, instead of $868,-315.01, and the certificates of stock had been reprinted, so as to represent the total ownership, in which the stockholders shared, by the figures $10,000,000, instead of $2,000,000. Intermediately the stockholders, instead of holding certificates of stock in the Alpha Portland Cement Company for $2,000,000, representing the entire ownership in which they shared, held also for an instant of time certificates of stock in the Cement Manufacturing Company for $2,001,000, representing the entire ownership in which they shared the latter company.

. 2. At the end of the transaction, the defendant company had precisely what it had before. Its bookkeeping figures had been changed as to the value of its assets from $868,315.01 to $10,000,000, and there had been a like change in the figures of its capital stock account from $2,-000,000 to $10,000,000. The Cement Manufacturing Company had intermediately enjoyed a transitory life of short duration.

3. The real transaction was nothing more than effecting a reorganization of the defendant company, for the purpose of increasing its nominal capital, in the sense of changing the figures which represented its total stock issue.

4. The transaction as it was made to appear to be was this: The company owned the Buckhorn and other property already mentioned. It carried them upon its books at a cost value of $868,315.01. It sold them for $2,000,000, and reinvested the money received in the stock of the Cement Manufacturing Company. It then declared a dividend, payable, not in money, but in this stock of $2,000,000 representing the profit of $1,131,684.99 received on this sale, and the balance received through an enhancement in value of other assets. Its stockholders then exchanged this $2,000,000 of stock in the Cement Manufacturing Company for preferred stock of the defendant merged company of like nominal value.

The thing done belongs to the legerdemain of finance. The taxing authorities claim the transaction discloses a profit made during the year of $1,131,684.99, and this results as a legal judgment from the facts revealed by the affidavit of defense. The defendant denies the conclusion, but denies it as a fact conclusion. This brings us to the question of whether what is to be found is to be found as a conclusion of law or as a finding of fact. This is the fine point spoken of, to which the discussion is reduced. We think the case is one to be determined by a finding of fact, and in the face of the denials of the affidavit we do not see our way clear to find the essential fact in favor of the plaintiff. The question is a trial question, and cannot be determined on a demurrer, the legal equivalent of which the present motion is.

. The rule for judgment is discharged.